KATE RICHARDSON

*v.*

CARL RICHARDSON *et al.*

*Filed at Ottawa October 26, 1893.*

1. GIFT—*inter vivos—what necessary to constitute.* In order that a gift *inter vivos* be valid there must be an intention on the part of the giver, and a delivery of the gift to or for the donee in pursuance of such intention, and also an acceptance. An intention on the part of the donor that the gift shall go into immediate and absolute effect is essential. The mere fact of a delivery and acceptance, or permission to take, followed by possession, is not, of itself, sufficient to establish a gift, as they may be equally consistent with a loan or sale.

2. SAME—*intention.* The intention of the parties, as well as the acts done, is necessary in determining the character of the transaction, and the right to a gift largely depends on the meaning and intention of the donor, as gathered from all the circumstances of the case.

3. The delivery of money by a husband to his wife is consistent with an intention that she shall keep and take care of it for him, and it is often difficult, if not impossible, to distinguish the possession of chattel property in the wife from possession in the husband. It is therefore especially necessary in gifts between husband and wife that the evidence of intention should be clear.

4. SAME—*revocation—promissory note.* A gift is always revocable until it is executed, and a promissory note intended purely as a gift to

the payee is but a promise to make a gift in the future. The gift is not executed until the note is paid.

5. STATUTE OF FRAUDS—*parol ante-nuptial agreement.* A parol ante-nuptial agreement is void under the Statute of Frauds, and the marriage is not sufficient to take such an agreement out of the operation of the statute.

6. PROMISSORY NOTE—*consideration.* A promissory note by a husband to his wife, made in pursuance of a verbal ante-nuptial agreement, which is void under the Statute of Frauds, is without consideration.

7. SAME—*by husband to his wife.* A promissory note from a husband to his wife, made after their marriage, either as a gift or in pursuance of a verbal ante-nuptial contract, is not valid against the maker's estate, either as founded on a valuable consideration or as a gift *inter vivos.*

8. SAME—*burden of proof to show a want of consideration.* A promissory note being a negotiable instrument, imports a consideration, and the burden of proof is upon the maker or his personal representatives, in the first instance, to show the contrary.

9. SAME—*evidence sufficient to show want of consideration.* A husband, after marriage, gave his wife a promissory note for $25,000, and it was shown that at the time of her marriage she had in her own right no money or property out of which she could have given a consideration for $25,000, and that she acquired nothing after her marriage to the date of the note, except by way of gifts from her husband : *Held,* that this proof established, *prima facie,* a want of consideration for the note.

10. WITNESS—*competency of widow against heirs.* On a bill by the heirs of a deceased person to impeach a promissory note made by the decedent, in his lifetime, to his wife, for want of consideration, the wife is not a competent witness in her own behalf to show a consideration.

APPEAL from the Appellate Court for the Second District ;—heard in that court on appeal from the Circuit Court of Jo-Daviess county ; the Hon. JAMES SHAW, Judge, presiding.

On May 3, 1890, Norman B. Richardson departed this life, intestate, leaving appellant, his widow, and appellees, together with William N. Richardson and Adelaide Sanford, his children by a former marriage, surviving him. He left an estate, largely in money and securities, estimated at $200,000. On June 13, 1890, the widow, this appellant, sold and assigned to the First National Bank of Shullsburg, Wisconsin, two promissory notes, dated February 22, 1889, payable to her

three years after date, one for $100, with eight per cent interest, and the other for $25,000, without interest, signed by the deceased. These notes were filed for probate by the bank in the county court of Jo Daviess county, against the estate of Richardson, and after protracted litigation in that and the circuit court, were allowed for $27,806, and that judgment remains in full force and effect. The heirs of the deceased resisted the allowance of both notes, on the ground that they were without consideration, and had in fact never been delivered. Subsequently appellees filed this bill againt appellant, William N. Richardson, Adelaide Sanford, Ezra Carr, administrator, and the above mentioned bank, alleging, among other things, that said notes were made without any sufficient consideration and were never delivered by the maker; that if delivered they were mere gifts, and void, except in the hands of an innocent purchaser; that the administrator had been requested to file a bill for the relief prayed, but refused so to do. The prayer is that appellant be decreed to hold the money received by her from the bank in consideration of the assignment of said notes, in trust, for the use of the administrator and heirs of deceased, and out of the money to be paid her, as widow, that amount be deducted. The answer of appellant denied the material allegations of the bill, and on a hearing the circuit court found in her favor, dismissing the bill at complainant's cost. The Appellate Court having reversed that decree as to the note for $25,000, and remanded the cause, with directions to the circuit court to enter a decree in accordance with the prayer of the bill as to it, appellant prosecutes this appeal.

Messrs. D. and T. J. & J. M. SHEEAN, for the appellant:

Appellees were bound to prove that the notes were without consideration, or fail. *Stacker* v. *Hewitt*, 1 Scam. 207; *Topper* v. *Snow*, 20 Ill. 434; *Mitchell* v. *Deeds*, 49 id. 420; *Dowden* v. *Wilson*, 108 id. 257.

The Statute of Frauds is a personal privilege, and may be waived. If the party fails to plead it, the statute will be waived. *McCoy* v. *Williams*, 1 Gilm. 584; *Mitchell* v. *King*, 77 Ill. 463; *School Trustees* v. *Wright*, 12 id. 432; *Boston* v. *Nichols*, 47 id. 353; *Denniston* v. *Hoagland*, 67 id. 266; *Coal Co.* v. *Liddell*, 69 id. 639; *Gordon* v. *Reynolds*, 114 id. 118; *King* v. *Bushnell*, 121 id. 656; *Tarleton* v. *Vietes*, 1 Gilm. 470.

A note imports a consideration. Tiedeman on Com. Paper, sec. 152; Edwards on Bills and Notes, 56, 169; *Archer* v. *Claflin*, 31 Ill. 315; *Hoyt* v. *Jaffray*, 29 id. 104.

Mr. E. L. BEDFORD, for the appellees:

The parol ante-nuptial contract was void under the Statute of Frauds. *McAnnulty* v. *McAnnulty*, 120 Ill. 26.

Marriage is not sufficient to take such an agreement out of the statute. *McAnnulty* v. *McAnnulty, supra; Henry* v. *Henry*, 27 Ohio, 121; *Lloyd* v. *Fulton*, 91 U. S. 479.

Appellant was not a competent witness in her own behalf. *Connelly* v. *Dunn*, 73 Ill. 218; *Treleaven* v. *Dixon*, 119 id. 548; *Bernard* v. *Bernard*, id. 92; *May* v. *Harriman*, 126 id. 132.

Appellees, in this case, had the right to avail of the Statute of Frauds without pleading it. *Wheeler* v. *Frankenthal*, 78 Ill. 124; *Beard* v. *Converse*, 84 id. 516; *Dowden* v. *Wilson*, 108 id. 257.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

The right of the complainants to maintain this bill on the facts alleged is, we think, clear, and the only substantial question in the case is the validity of the $25,000 note mentioned in the foregoing statement. The allegation that it was never delivered is unsupported by proof. Unless valid as a gift *inter vivos*, which will be considered hereafter, it can only be sustained as given for a valuable consideration. Being a negotiable instrument, it, of course, imports such a consideration, and the burthen of proof is upon the representative of

the deceased maker, in the first instance, to show the contrary.
It was clearly shown on the hearing that at the time of her
marriage, appellant had in her own right no money or prop-
erty out of which she could have given a consideration for
$25,000, and that she acquired nothing after her marriage to
the date of the note in question, except by way of gifts from
her husband. This proof established, *prima facie,* a want of
consideration for the note, and the case is so treated in the
argument,—that is to say, it is conceded that whatever con-
sideration there was for the note came from the husband, or
was given in consideration of a previous promise made by him.

Counsel for appellant insist that the proof on behalf of ap-
pellant shows a consideration upon either one of two theories :
First, that there was a verbal ante-nuptial agreement between
Richardson and appellant, whereby he agreed that in consid-
eration of her becoming his wife she should have $80,000 out
of his estate, and that in pursuance of that agreement, and
in part performance of the same, this note was given. Man-
ifestly this position is untenable, for the reason that a parol
ante-nuptial agreement is void under the Statute of Frauds.
(1 Starr & Cur. Stat. chap. 59, sec. 1, 1187.) The marriage is
not sufficient to take such an agreement out of the operation
of the statute. (*McAnnulty et al.* v. *McAnnulty et al.* 120 Ill.
26, and cases cited.) But if it were otherwise, the position
contended for could not be maintained for want of competent
proof to support the alleged agreement. Appellant herself
alone testified to such a contract, and she was incompetent as
a witness in her own behalf on that subject. (1 Starr & Cur.
Stat. sec. 2, chap. 51, 1072; *Connelly* v. *Dunn,* 73 Ill. 218;
*Treleaven* v. *Dixon,* 119 id. 548; *Way* v. *Harriman et al.* 126
id. 132.

But it is again insisted that the proof shows gifts of large
sums of money by the husband to the wife, which she, from
time to time, "loaned back to him," finally taking the note in
question in consideration of those loans, and in our view of

the case, if the decree of the circuit court can be sustained at all, it must be upon this theory. The only competent witness testifying to the facts upon which the position is based is a niece of appellant, Nellie Hockin. She testified that she came to the home of her aunt and Richardson, in Warren, this State, about the first of January, 1889, and remained there for some months; that shortly after her arrival she saw Richardson give his wife $10,000, and a day or two later $8000, both sums being in bank bills; that she afterwards saw him give her other sums of money, but could not state the amounts. Her language as to the manner of making these gifts is: "He brought it in and told her it was her own money, and she put it away." On cross-examination she says she can not state what her aunt said in reply, if anything. She further testified that the money, when handed to her aunt, was put up in packages of $500 and $1000 each, being in bills of $100, $50, $20 and $10, and perhaps some $5. The $10,000, she says, was put in the trunk of appellant in an unoccupied room in the dwelling, and the $8000 in a trunk belonging to the witness in her room, and there remained some two or three weeks, until it was borrowed back by Richardson in different sums. According to her statement one of these loans was $3000, another $4000 or $5000. The other sums loaned she can not state, but says, "I think she had loaned it all to Mr. Richardson before that time," viz., the date of the note. To the question by appellant's counsel, "You may state what had become of the additional money you saw him give her in smaller packages before the 22d of February, 1889,—what had become of that,—the sums you can't fix the time of?" she answered, "I guess he had got all of that before that time, too." As to the giving of the notes, she was asked what occurred at the dinner table on that day, and answered: "I think my aunt took $100 out of her pocket and asked him to loan it, and he said he would, and he took the money and loaned it with some of his money, and he said, '*That reminds me of something else*

*I have promised to do for you.'"* Question: "What, if any-
thing, was said at that time as to the rate of interest?" An-
swer: "He said he would give her eight per cent for the
$100." Question: "Now, if anything further took place on
that same day, state when and where, and what you know
about it?" Answer: "Mr. Richardson brought the notes up
with him, but I don't remember seeing him give them to her,
and I was in the kitchen getting supper when he came home,
and he said, 'Nellie, I have brought the notes home, and if
you will go in there your aunt will show them to you,' and I
went in and she showed them to me. She had a $100 note,
and a $25,000 note, and she asked me where to put them,
and she said she thought it would be a good place in the bot-
tom drawer of the dresser." She here identified the notes
described in the complainant's bill, as the ones then shown
her by her aunt.

There is much more of her testimony, drawn out by re-
peating questions and cross-questions, but the foregoing is
the substance of her evidence relating to the gifts, loans and
execution of notes. No one will deny that her statements,
tested by experience and general observation in business trans-
actions, are most unreasonable and improbable. But con-
ceding all she says to be true, was there a complete gift of
money and a subsequent borrowing of it by the husband, and
does her evidence show that the note in controversy was given
in consideration of those loans?

In order that a gift *inter vivos* be valid there must be an
intention on the part of the giver, and a delivery of the gift
to or for the donee in pursuance of such intent, and also an
acceptance. An intention on the part of the donor that the
gift shall go into immediate and absolute effect is essential.
"The mere fact of a delivery and acceptance, or permission to
take, followed by possession, is not, of itself, sufficient to estab-
lish a gift, as these may be equally consistent with a loan or
sale. The intention of the parties, as well as the acts done, are

necessary in determining the character of the transaction."
(8 Am. and Eng. Ency. of Law, 1336.)   "The right to a gift
largely depends on the meaning and intention of the donor,
as gathered by all the circumstances of the case."   (Ibid.)
The delivery of money by a husband to his wife is consistent
with an intention that she shall keep and take care of it for
him, and it is often difficult, if not impossible, to distinguish
the possession of chattel property in the wife from possession
in the husband.   It is therefore especially necessary in gifts
between husband and wife that the evidence of intention to
give should be clear.   The acts and declarations of the hus-
band testified to by Miss Hockin by no means clearly and sat-
isfactorily show an intention on his part to make an absolute
and unqualified gift of $25,000 in cash to his wife.   In weigh-
ing this evidence, as tending to establish valid gifts, we do not
ignore the testimony of the witness as to declarations by the
husband of his promise, before marriage, to give his wife more
than one-third of his estate; but there is much more reason
to believe, from all the evidence, that an attempt was made
to fulfill that promise by the gift of the note itself, than by
the indirect method here insisted upon.   If the gifts of the
large sums of money were actually made as claimed, it must
have been done in the unusual manner stated by the witness,
with the purpose of giving the wife more than the law would
allow her at the husband's death, and yet we are told that the
money given was all returned to the giver without any note or
memorandum to evidence the transaction.   Sums amounting
to thousands of dollars, it is said, were loaned out of these
gifts, to the giver, without any written evidence of such loans
at the time they were made.   Even when the note in question
was given, Miss Hockin does not pretend to say that it was
understood by the parties to be for borrowed money.   Eight per
cent interest was to be paid for the $100.   The $100 handed
the husband at the dinner table reminded him, not that he
owed his wife for other borrowed money, but of something he

had promised to do for her, and he brought back two notes, exact copies of each other, except in amounts, and the provision in the smaller one for interest. It is passing strange, if both these notes were given for borrowed money, that two, instead of one, were given, and the one for $25,000, if for money actually borrowed, as claimed, was to run for three years, without interest.

But we think the evidence affirmatively shows that this note was not intended to be given for money borrowed. This same witness, Miss Hockin, testifying to a conversation between her aunt and Richardson in September following the date of the note, answered interrogatories by the court, as follows:

Q. "Can you recollect anything more that was said than you testified to here, why he gave her the $25,000 note?

A. "*To fulfill his promise to her before their marriage.*

Q. "Have you got it right, now, as you recollect it? Go on, and state anything more you were going to in the first place. Do you recollect anything more?

A. "I have said it all now.

Q. "You were proceeding to state something when you were interrupted. Now state to me all that he said. Just name over again why he gave her this $25,000 note.

A. "*Because he had promised to give her more than a third before their marriage.*

Q. "He said he had promised, before their marriage, to give her more than a third?

A. "*Yes, sir. He always said it, and he said he was going to do it.*"

It was shown by a stenographer, testifying from notes taken of the testimony of appellant, given in a citation proceeding in the county court, that she there stated: "I knew he was going to make up notes. I knew it in mid-summer, 1888, before my marriage." Question: "Who was present when the talk or arrangement was had from which you derived your knowledge that said notes were to be made, as now testified

by you?" Answer: "Mr. Richardson and myself. We had only the one conversation. It was in Rochester, New York. No one was present but he and I. I never heard him speak of them to any person. No person was present or heard the conversation about those notes prior to the time they were made." This testimony is uncontradicted and wholly unexplained by her. It shows clearly that appellant then understood the notes to have been given, not for loans, but because of the antenuptial promise. Three witnesses testified to the effect that she admitted to them, prior to the filing of this bill, that the notes were gifts to her from her husband.

After a careful study of this record we entertain no doubt that the motive and purpose of Norman B. Richardson in executing and delivering to appellant his promissory note for $25,000, were to make a gift to her of that sum of money in addition to her statutory rights as his widow, in all probability because he had promised her, before the marriage, to provide for her receiving something more than the law would give her. If the gift of a promissory note could be upheld in law, the case would be free from difficulty. We said, however, in *Williams* v. *Forbes*, 114 Ill. 171: "A gift is always revocable until it is executed, and a promissory note intended purely as a gift is but a promise to make a gift in the future. The gift is not executed until the note is paid." See, also, *Fink* v. *Fink*, 18 Johns. 145. Other authorities might be cited to the same effect, and we know of none to the contrary.

As we read this record, the attempted gift of $25,000, as between the parties to this bill, is of no more effect than a verbal declaration or contract to give his wife that amount out of his estate in addition to what she could receive under our Statute of Descent would have been, and that, no one will seriously contend would have been valid.

We concur in the conclusion reached by the Appellate Court, and its judgment will be affirmed.

*Judgment affirmed.*