CATHERINE M. AUSTIN

*v.*

CAROLINE B. KUEHN *et al.*

*Opinion filed June 23, 1904—Rehearing denied October 13, 1904.*

CONTRACTS—*oral contract in consideration of marriage is within the Statute of Frauds.* An oral promise to leave the promisee a sum of money in consideration of her marrying a certain person is within the Statute of Frauds.

*Austin* v. *Kuehn*, 111 Ill. App. 506, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

The plaintiff in error, Catherine M. Austin, filed her claim in the probate court of Cook county against the estate of James E. Baker, deceased, for $7100, based upon an alleged promise of the deceased to leave her the sum of $7500 by his last will and testament, $400 of that amount having been paid during his lifetime. The statement of the claim is set up in writing, and is substantially as follows:

"The claimant, Catherine M. Austin, was a servant employed in the family of Baker, and she relied and depended greatly upon his advice and counsel. She was sought in marriage by two men. Baker volunteered to investigate the character and standing of the two men for her benefit. He afterwards informed her that one of them, named Diamond, was of better character and standing and more suitable as a husband than the other. He stated and represented to her that if she would marry Diamond and refrain from marrying the other man he would bequeath and leave to her, by his last will and testament, the sum of $10,000, and thereupon, relying upon this promise, she entered into marriage with Dia-

211—8

mond and lived with him as his wife during his lifetime. Afterwards, about November 15, 1889, in consideration that she would surrender and deliver to Baker certain letters which he had written to her, he promised to pay her the sum of $2500 in cash on account of the $10,000 which he had agreed to bequeath to her, and he also agreed to leave her, by his last will and testament, the sum of $7500. She delivered the letters to him and he thereupon paid her the sum of $2500, in cash. Baker afterwards, in his lifetime, paid to her, on account, the sum of $400, leaving a balance of $7100 due her upon this alleged promise."

The claim was disallowed by the probate court and an appeal was prayed to the circuit court, where, upon a hearing, the court instructed the jury to find a verdict for the defendant, which was done and judgment entered against the claimant for costs. A writ of error was sued out of the Appellate Court for the First District, where the judgment of the circuit court was affirmed, to reverse which this writ of error is prosecuted.

WILLIAM A. DOYLE, and PLINY B. SMITH, for plaintiff in error.

HENRY R. BALDWIN, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

There are two good reasons why the judgment of the Appellate Court must be affirmed, either of which is conclusive of the case. The only evidence in support of the claim of plaintiff in error is the deposition of Walter B. Sayler, who testified that in 1890, in his office in the city of Chicago, Baker, the deceased, informed him that he had promised the plaintiff in error that if she would marry Diamond he would leave her $10,000 in his last will and testament; also, that at the time this statement was made Baker saw lying upon a desk in the office of

the witness certain letters which he, Baker, had written to the claimant which he was anxious to secure, and then promised the witness if possession of them was delivered to him he would pay her, the claimant, part cash upon his former promise and leave her $7500 by his last will and testament. The contents of the letters are not shown by the evidence and can only be inferred from the testimony of the witness Sayler. It does, however, sufficiently appear that they were compromising in their character as to both the deceased and the plaintiff in error, and he was anxious to get possession of them for that reason.

It is undoubtedly the law that a person may make a valid agreement to dispose of property in a particular way by will, and such contracts may be enforced in equity, after the decease of the person making the promise, against his heirs, devisees or personal representative. (22 Am. & Eng. Ency. of Law, p. 974; *Dicken* v. *McKinley*, 163 Ill. 318.) But the evidence in this record does not support that theory of plaintiff in error's claim. The only evidence offered in support of it is to the effect that the deceased promised, if the letters were surrendered, he would pay the sum of $2500, either in cash or upon his note, and would pay the balance of $10,000 as soon as he sold certain stock which he owned in an express company. If this evidence is true, the contract was made as a substitute for the original contract, and there was nothing contained in its terms by which the deceased agreed to leave the $7500 to plaintiff in error by will. The original contract relied upon was upon condition that the plaintiff in error would marry a certain man. That contract is claimed to have been changed by various conversations and dealings between the parties, but whatever were the terms of the final agreement, they were the outgrowth of the original contract that claimant should marry the man Diamond. However varied in terms, the promises all grew out of that agreement. No

written evidence was offered by claimant in proof of that contract. Section 1 of the Statute of Frauds provides: "No action shall be brought whereby to charge * * * any person upon any agreement made upon consideration of marriage, * * * unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." Sayler testified that deceased, after the surrender of the letters, gave the witness a card with the name "James E. Baker" printed on one side of it and on the other "$7500." This card was not produced in evidence, and even if it had been, it was not such an agreement, note or memorandum in writing as is required by the foregoing statute. The alleged promise being oral, and given originally in consideration of marriage, was within the Statute of Frauds, and no action could be maintained upon it.

But, independently of the foregoing consideration, we think the evidence was insufficient to support the claim. As filed, it was a most unnatural and extraordinary one, which no court could look upon without suspicion. The only testimony introduced to support it was the deposition of the witness Sayler, who was admittedly interested in the allowance of the claim, having a fee conditioned upon its collection. He had formerly practiced law in Chicago, but in 1899 removed to Missouri and engaged in the mining business. His conversation with the deceased, he says, was in 1890. Nearly twelve years thereafter he testified in this case, and claimed to give the conversation in the exact words used by himself and the deceased, without anything whatever from which to refresh his recollection. His testimony, in view of his interest, is so incredible as to entitle it to little or no weight or consideration; and this is especially so in view of the fact that the representatives of the deceased were without the means of contradicting it. On either ground

the circuit court was fully justified in instructing the jury to find for the defendant.

The judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*