MINNIE H. BADER, Appellant, v. ANDREW N. HISCOX, Appellee.

**FRAUDS, STATUTE OF:** Promise Made on Marriage Consideration.
1 An agreement that a property settlement would be made upon a seduced woman if she would dismiss her civil action against the seducer and marry him, and thereby abate criminal proceedings, is not a promise made in consideration of marriage.

**FRAUDS, STATUTE OF:** Promise on Consideration of Marriage—
2 Performance. *Arguendo*, it is conceded that the actual entering into the marriage relation does not constitute performance or part performance of a promise made in consideration of marriage.

**FRAUDS, STATUTE OF:** Denying Statute to Prevent Fraud. It is
3 suggested that he who makes a *promise in consideration of marriage* may not take cover under the statute of frauds, and thereby avoid performance, *when he has enveigled the woman into an actual marriage* on the pretense that the promise would be performed.

**FRAUDS, STATUTE OF:** Debt or Default of Another. An agreement with a seduced woman, made by the father of the seducer,
4 that *he* (the father) would make a settlement on the woman if she would dismiss civil and criminal proceedings against the son, is not a promise to answer for the debt or default of *another*.

*Appeal from Cherokee District Court.*—C. C. BRADLEY, Judge.

NOVEMBER 11, 1919.

REHEARING DENIED APRIL 13, 1920.

ACTION at law, to recover damages for an alleged violation of contract. There was a directed verdict and judgment for defendant, and the plaintiff appeals.—*Reversed.*

*Claud M. Smith,* for appellant.

*Molyneux & Maher,* for appellee.

WEAVER, J.—This action was begun on September 13, 1918. The petition alleges that, in the year 1891, when plaintiff was about 17 years of age, she was seduced by one

Eugene Hiscox, son of the defendant herein,

1. FRAUDS, STAT-
UTE OF: prom-
ise made on
marriage con-
sideration.

and, as a result of her association with the said Eugene, she became pregnant, and gave birth to a daughter in September, 1892; that, shortly before the birth of the child, plain-

tiff brought action against the said Eugene Hiscox in the district court of Cherokee County, to recover damages for her seduction and for breach of promise of marriage, and also instituted criminal proceedings against him in the courts of that county, to punish him for said offense.

Plaintiff further alleges that, soon after the institution of said proceedings, civil and criminal, the defendant, father of Eugene Hiscox, came to her and offered that, if she would marry Eugene, and dismiss the proceedings against him, civil and criminal, he, defendant, would convey to the plaintiff a certain designated 40 acres of land in Cherokee County; that plaintiff accepted said offer, and did then and there dismiss her action for damages, and, by marrying the accused, caused the criminal proceedings against him to be abated; but the defendant neglected and refused, and still neglects and refuses, to perform his agreement to convey to her the land.

Plaintiff further alleges that the contract pleaded by her was made in Cherokee County, Iowa, where all the parties then resided; but that, after the performance of said agreement on her part, and within less than five years thereafter, the defendant removed from this state to the state of Mississippi, where he has since continuously resided; that, at the date of said agreement and its perform-

ance on her part, the land was reasonably worth about $1,400, for which sum, with interest thereon, and for rents and profits of the land, she asks a recovery of $5,084. By an amendment to her petition, plaintiff increases her claim for damages to $8,000.

The defendant answers the petition, denying its allegations, pleading the statute of limitations, and alleging that the contract pleaded by plaintiff is "immoral, void, and in contravention of the statute of frauds."

The testimony offered tends fairly to sustain the allegations of the petition that, when the said Eugene Hiscox had been made defendant in both civil and criminal proceedings, charged with plaintiff's seduction, appellee visited plaintiff, and proposed that she dismiss her suit for damages, and, by marrying his said son, put an end to the criminal prosecution against him; and that, if she would do so, he, defendant, would convey to her by deed a certain 40 acres of land then owned by him. He further explained to plaintiff that, unless she married Eugene, the young man was liable to be sent to prison, and agreed that, if she would accept his offer, and release his said son from both civil and criminal liability, he would execute the deed of the land to her, as proposed, and send it to her with the marriage license. It is alleged that plaintiff finally accepted the proposition, the marriage was solemnized, the civil suit dismissed; and the criminal proceeding abated, but that defendant did not send the deed, as promised; that, shortly after the marriage, defendant again visited plaintiff at her home, and asked her to go out to the farm and live with Eugene, saying that he would make the deed and send it by Eugene when he (Eugene) came for her, and would put buildings on the 40, so that she and her husband could move upon it in the spring; that, without performing his promise in any respect, defendant left the state, since which time he has been and remained a nonresident of Iowa; that,

on two or more occasions since that time, when temporarily
visiting Iowa, defendant talked with plaintiff on the subject,
admitting his promise, and expressed his purpose to convey
the land to her, for the benefit of herself and of the child,
but always postponed the making of the deed, on some ex-
cuse or pretext. Plaintiff's testimony is corroborated in
most respects by several witnesses. The land in question
is shown to have been worth from $32 to $35 per acre in
1892, but has since advanced in value to about $250 per
acre. It appears, also, that defendant sold and conveyed
the land to a third person, in the year 1896, but this was
not known to the plaintiff until several years thereafter.

When plaintiff had rested her case in chief, the defend-
ant moved the court to strike all the testimony offered in
support of her claim, and to direct a verdict in defendant's
favor, on the grounds:

1. That the contract alleged and sought to be proved
is within the statute of frauds, and, not being in writing,
no proof thereof is admissible.

2. That the alleged cause of action is barred by the
statute of limitations.

3. That proof of the value of the land does not afford
the correct measure of plaintiff's damage, if any, and that
there has been unreasonable delay in bringing her action.

The motion was sustained by the court, a directed ver-
dict for defendant was returned, and judgment entered
thereon.

I. The record does not clearly indicate whether the trial
court sustained the motion to strike, and for a directed
verdict generally, upon all the grounds assigned therefor,
but we infer from the abstract that the order was based on
the objection that the contract pleaded by the plaintiff is
within the statute of frauds. It is quite evident, we think,
that there is no merit in the objection that plaintiff did not
sufficiently avoid the plea of the statute of limitations, or in

the further objection that there is no sufficient proof of damages resulting to the plaintiff from the alleged violation of contract. We shall, therefore, confine our discussion to the question whether proof of the alleged contract is so affected by the statute of frauds as to preclude plaintiff's right to a recovery.

The provision of the statute referred to is that:

"Except when otherwise specially provided, no evidence * * * is competent, unless it be in writing and signed by the party to be charged," of certain specified contracts, among which are: "(2) Those made in consideration of marriage; (3) those wherein one person promises to answer for the debt, default or miscarriage of another * * *; (4) those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year." Code Section 4625.

By the next section, Code Section 4626, it is provided that the provisions of the fourth subdivision of Section 4625, above quoted, relating to lands, shall not apply when any part of the purchase price has been paid, "or when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds."

It may be conceded, for the purposes of this case, that, if the promise upon which plaintiff relies, and for breach of which she asks damages, is within the statute of frauds, as being a promise in consideration of marriage, then the fact that she did enter into the marriage is not performance or part performance, bringing it within the exception provided for in Code Section 4626,—though there is very respectable authority to the contrary: *English v. Richards Co.*, 109 Ga. 635; Browne on Statute of Frauds, Section 459; *Nowack v. Berger*, 133 Mo. 24; *Larsen v. Johnson*, 78 Wis. 300.

2. FRAUDS, STATUTE OF: promise on consideration of marriage: performance.

We have, then, to inquire whether the alleged promise in this case was within the statute, as having been made in consideration of marriage. In our judgment, this question must be answered in the negative. In the first place, let us recall that our statute of frauds does not make a contract which is within its terms either unlawful or void, and in this respect it differs from the statute of frauds in some other jurisdictions. The sole effect of the statute as we have it is to deny to the promisee the right to establish such contract or promise by parol proof. It follows, we think, that, if a promise be made upon a lawful and sufficient consideration, which is not within the statute, and may be established by parol testimony, the promisor cannot evade liability thereon because there was another or additional consideration, proof of which is excluded by the statute. But we think it clear that the promise in this case was not made in consideration of marriage. The thing for which the defendant was bargaining was not the marriage of his son, but the release of his son from liability to a judgment for damages in the plaintiff's civil suit, and to obtain a dismissal of the criminal prosecution against him. The marriage was a mere incident, and not the end to be attained or purpose to be accomplished, and to that end, defendant was willing to make a marriage settlement upon the plaintiff, for the protection of herself and of the child born, or to be born, of her relations with the accused.

Quite applicable in principle, though diverse in its facts, is the precedent found in *Larsen v. Johnson*, 78 Wis. 300. In that case, Susan Larsen, a widow, having a small amount of property, entered into an oral contract with Andrew Johnson, by which the latter undertook to provide for her support, pay her debts, and take care of, manage, and improve her land, so as to make it productive for such purpose; and to that end it was agreed that they should

become husband and wife, and live together on the land, and, in consideration of the foregoing agreement, the said Susan would convey the land to her husband in fee simple. The parties were married, and the husband performed the obligations of his said agreement. After the death of Susan, litigation with her heirs ensued, involving the question of the validity of the agreement between Johnson and his wife, and the statute of frauds was invoked by the parties claiming adversely to the husband. The court overruled the objection, saying:

"The marriage of the parties was not the consideration of the contract to convey the land or any part of it. It was only incidental, as the condition or relation in which the respondent should render to the said Susan Larsen, and she receive, her support and comfort, as the consideration of the conveyance. The agreement to marry may have been made at the same time, but not as any part of the consideration for the conveyance. It was for the benefit of the respondent, as much as, if not more than, it was for her benefit. There *was sufficient lawful and valuable consideration to support the contract, aside from any supposable consideration of marriage.*"

Now, plaintiff had the right to settle or dismiss her suit for damages, and to consent to the dismissal of the criminal prosecution. The defendant had the right to purchase immunity for his son, in the civil case, on the best terms he could obtain, and he could lawfully bind himself to make provision for the support of plaintiff or her child, in consideration of the release by her of his son from criminal liability for her seduction. *Armstrong v. Lester,* 43 Iowa 159; *Wright v. Wright,* 114 Iowa 748. To be sure, the only way plaintiff could effectually dismiss the criminal proceeding was by marriage with her alleged seducer; but here again is demonstrated the fact that the marriage was only an incident to the thing contracted for, the release of the

accused from further liability, civil and criminal, for the wrong with which he was charged. Plaintiff has performed her part of the agreement; she has dismissed her action for damages, and by her act has secured the discharge of the defendant's son from criminal liability; and there is no apparent reason why defendant should not be held to performance on his part.

There is another aspect of the question we have discussed which, though possibly not quite pertinent to the case as made by the plea, is not without bearing upon the

3. FRAUDS, STAT-
UTE OF: deny-
ing statute to
prevent fraud.

principles we affirm in this decision. The purpose and intent of the statute of frauds is to prevent fraud, and the courts will, so far as possible, refuse to permit it to be made the shield for fraud. Discussing the subject, the Massachusetts court says of precedents applying to this rule:

"The cases most frequently referred to are those arising out of agreements for marriage settlements. In such cases, the marriage, although not regarded as a part performance of the agreement for a marriage settlement, is such an irretrievable change of situation that, if procured by artifice, upon the faith that the settlement had been, or the assurance that it would be, executed, the other party is held to make good the agreement, and not permitted to defeat it by pleading the statute." *Glass v. Hulbert,* 102 Mass. 24, 39.

See, also, *Peek v. Peek,* 77 Cal. 106; *Green v. Green,* 34 Kan. 740; 4 Pomeroy's Eq. (3d Ed.), Section 1409.

The further suggestion by appellee, that the alleged promise of the defendant is within the statute of frauds, as being an engagement or promise to answer for the debt,

4. FRAUDS, STAT-
UTE OF: debt
or default of
another.

default, or miscarriage of another, is not sound. The defendant did not undertake to answer for the debt or default of his son. The promise, if made at all, was his own individual undertaking, and this is none the less true

because his son enjoyed the benefit, in whole or in part, of the performance of the agreement on part of the plaintiff. The obligation assumed by him was primary, and upon his own credit. Nor can the promise be avoided on the theory that it was the transfer of title or interest in real estate, for plaintiff's evidence sufficiently shows full performance on her part.

It follows that the trial court erred in striking the evidence and directing a verdict for the defendant. A new trial is, therefore, awarded.

The judgment below is—*Reversed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.