(No. 24606.—

HARRY A. FRANKEL, Appellee, *vs.* ALLIED MILLS, INC., Appellant

*Opinion filed October 13, 1938—Rehearing denied Dec. 7, 1938.*

WINSTON, STRAWN & SHAW, and MILLER, ELLIOTT & WESTERVELT, (JOHN C. BLACK, FRANK T. MILLER, JOHN D. THOMASON, and GERARD E. GRASHORN, of counsel,) for appellant.

LANDIS, LANDIS & LANDIS, and HENRY E. PRATT, (ALVIN LANDIS, CHARLES S. DENEEN, ROY MASSENA, MARSHALL A. PIPIN, and BENJAMIN LANDIS, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On September 27, 1935, Harry A. Frankel, appellee, a licensed Illinois real estate broker, filed his complaint in the circuit court of Cook county to recover a commission claimed to be due from Allied Mills, Inc., appellant. At the close of appellee's evidence appellant moved for a directed verdict. The court reserved its ruling on the motion. Appellant offered no evidence and the issues were submitted

to the jury, which returned a verdict of $17,000 for appellee. Appellant then moved for judgment notwithstanding the verdict. It insisted that since appellee was not a licensed real estate broker in New York, his brokerage contract was unenforcible. The circuit court entered judgment for the defendant. The Appellate Court for the First District reversed that judgment and entered judgment on the verdict, for appellee. We have granted leave to appeal.

Appellee learned that the appellant desired to sell an improved tract of land in Peoria known as Corning Distilling Plant No. 1. He testified that he had no brokerage contract, but that he found a prospective purchaser and went to New York City in October, 1933, to arrange for the sale with Hinkley G. Atwood, the president of appellant. He obtained information as to the whereabouts of Atwood from Miller, who was counsel for and also one of the directors of appellant. When Frankel arrived in New York City he called Atwood at the Biltmore Hotel and told him he had a proposition he thought would appeal to him. Atwood was at first reluctant but finally agreed to meet appellee the next morning in the office of the Distillers and Brewers Corporation of America, the prospective purchaser. Appellee went into the office of Ungerleider of the Distillers and Brewers Company with Atwood and Robert Silberstein. Appellee told Atwood that Ungerleider could make a satisfactory deal, if appellee was paid a commission. He demanded $25,000 if a contract was consummated. Atwood demurred at first, but finally said: "All right, if I make a satisfactory deal, I will pay you $25,000." Ungerleider insisted that appellee and Silberstein leave the room so that he and Atwood could negotiate the contract. Conferences were held for about a week but they were not attended by appellee. After the contract was signed, Atwood refused to pay the $25,000-commission, because he insisted the terms of the deal had changed. Appellee said that he was surprised, since the commission was agreed upon. The appellant's contract with

the Distillers and Brewers Corporation provided that it should be of no force and effect unless there should be executed, simultaneously therewith, an agreement between the latter company and George A. Parker for the furnishing and installation of equipment in the Corning building. When Parker learned of the dispute between appellee and Atwood over commissions, he urged appellee not to permit his commission to hold up "such a wonderful deal." It was suggested that the amount of the commission should be settled by Parker and a Mr. Buhrer, an associate of Atwood. This was agreed upon in the presence of Atwood and the commission was fixed at $17,000. A memorandum made at that time showing the figure 17,000 and the initials of Buhrer and Parker was received in evidence. Appellee then asked for a check, but Atwood told him it would have to come from Chicago. Later the negotiations between Parker and the Distillers and Brewers Corporation failed, and appellant refused to pay the commission. Appellee stated that the first time he saw the contract between appellant and the Distillers and Brewers Corporation was in February, 1934. He admitted that when he was examined by Miller, appellant's attorney, on February 28, 1936, he said that if and when a contract was made he was to get $25,000. However, he also admitted that if no sale was made he was to get nothing.

Robert Silberstein, an associate of appellee, testified he was present during the conversation between appellee and Atwood in New York. He testified that Atwood said: "Well, if we make a contract here, we will pay the $25,000 commission." This witness was related to Ungerleider and represented him in the transaction. Oliver Jacobson and Parker also testified for appellee. Their testimony was corroborative of appellee and Silberstein.

Appellant contends that appellee, who was not a licensed real estate broker in the State of New York, is precluded from recovery by reason of the illegality of his brokerage

contract. Section 440-a of the New York Real Property law, (Consol. Laws, chap. 50, article 12-A) forbids any person, copartnership or corporation from holding himself or itself out or acting temporarily as a real estate broker or real estate salesman without first procuring a license. Section 442-d forbids any such person, copartnership or corporation from bringing an action in any court in that State for the recovery of compensation for services rendered as such broker without alleging and proving that he or it had a license. Section 442-e (1) provides that a violation of the act shall be a misdemeanor, and the commission of a single prohibited act is made a violation of the act. Section 442-e(3) provides a penalty of not less than the amount received as commission by the unlicensed broker nor more than four times such amount to be recovered by the person aggrieved.

The rule is well settled that the validity, construction and obligation of a contract must be determined by the law of the place where it is made or is to be performed, (*Walker* v. *Lovitt,* 250 Ill. 543; *Bell* v. *Farwell,* 176 id. 489; *Pritchard* v. *Norton,* 106 U. S. 124, 27 L. ed. 104;) but the remedy is governed by the law of the forum. (5 R. C. L. p. 917.) If a contract is not valid under the law of the place where it is made it will not be enforced in another State in which it would have been valid if made there. (*Burr* v. *Beckler,* 264 Ill. 230.) Appellee contends that the contract here sued on is valid, and that the New York statute merely affects the remedy. He relies on the language of section 442-d which forbids the bringing of an action in the New York courts by an unlicensed broker, and says that it is analogous to cases involving the Statute of Frauds. Where the Statute of Frauds is involved it is sometimes held that the contract is valid, and that the remedy, only, is affected. (*Lake* v. *Campbell,* 18 Ill. 106; *Collins* v. *Thayer,* 74 id. 138; *Booker* v. *Wolf,* 195 id. 365.) But there are other provisions in the New York statute which

show that contracts such as the one involved here are void. We have pointed out that a violation of the statute is made a misdemeanor, and that a penalty may be recovered by the person aggrieved. The rule is that when a statute declares that it shall be unlawful to perform an act, and imposes a penalty for its violation, contracts for the performance of such act are void and incapable of enforcement. (*Douthart* v. *Congdon,* 197 Ill. 349; *Miller* v. *Ammon,* 145 U. S. 421; 30 A. L. R. 841; 4 R. C. L. 300.) It is immaterial that the business regulated is carried on by a non-resident. (17 R. C. L. 488.) We have not been referred to a New York case which holds expressly that the statute applies to non-residents, who negotiate an isolated sale of Illinois real estate in New York, but such contracts as applied to residents of New York are held to be void. (*Bendell* v. *De-Dominius,* 251 N. Y. 305, 167 N. E. 452; *Sturm* v. *Truby,* 282 N. Y. S. 433; *Chelton Trust Co.* v. *National Automatic Press Co.* 215 N. Y. S. 200.) The object of the statute is to promote the public welfare by permitting only persons with the necessary qualifications to act as real estate brokers and salesmen. The location of the land outside the State of New York does not affect the policy of the statute, since it is the vendor and the purchaser who are sought to be protected. The statute does not in any way seek to regulate the sale of Illinois real estate, but operates only on the brokerage contract.

Appellee relies on *Pritchard* v. *Norton, supra,* and contends that the law of Illinois should apply because the parties to the brokerage contract intended that it should. There is no such situation in the case before us as was there presented. Appellee insisted that he had fully performed all services to be rendered appellant and that he was entitled to his pay. He asked for the money in New York at the conclusion of the conferences. There was nothing to be done in Illinois. Appellee had no contract before he went to New York and asked for an interview. While appellee

testified that he had heard the property was for sale and had made efforts in Illinois to find a purchaser, he also testified that he had no contract of any sort before going to New York and that he went on his own initiative. The *Pritchard case* is, therefore, not in point. The opinion, however, does contain a full review of the authorities and is in harmony with the conclusions we have reached.

The brokerage contract was invalid in New York, where it was made. It will not be enforced in the courts of this State. (*Burr* v. *Beckler, supra.*) Our holding on this point makes unnecessary a decision on appellant's contention that appellee failed to prove that he was entitled to recover, because the contract entered into by appellant and the purchaser was not binding and enforcible.

The judgment of the Appellate Court is reversed, and judgment is entered here, for the appellant.

*Judgment reversed, and judgment here.*