RUIZ v. MENDEZ et al.

Civ. No. 4232.

United States District Court
D. Puerto Rico, San Juan Division.
Aug. 19, 1949.

30

H. S. McConnell, San Juan, Puerto Rico, for plaintiff.

James R. Beverley, San Juan, Puerto Rico, Jose Lopez Baralt, San Juan, Puerto Rico, for defendants.

CHAVEZ, District Judge.

Plaintiff, a resident of and domiciled in New York, brings suit seeking judgment for services rendered to defendants in the City of New York, the City of Philadelphia and in the Town of Wauchula, Florida, in connection with the purchase of a distillery and for monies expended by him in performing said services. Plaintiff alleges that the defendants Miguel Angel Garcia Mendez and Americo Rodriguez caused the said distillery located by plaintiff and in connection with which plaintiff's services were rendered, to be purchased by the Mayaguez Distilling Company.

Defendants, in their answer, deny that the defendant Miguel Angel Garcia Mendez at any time requested the services of plaintiff, but admit that the defendant Americo Rodriguez requested plaintiff to obtain a distillery which Rodriguez or his associates would purchase, if satisfactory. Rodriguez admits that he agreed to pay plaintiff a commission of $2,500 but states that said commission was payable only if plaintiff succeeded in closing the deal. Defendants allege that "plaintiff failed to procure and close the deal" and that the $2,500 commission fee was to be paid, "provided that Plaintiff would effect the deal". Defendant denies that plaintiff spent $700 in performing the services and alleges that they never promised to reimburse plaintiff.

Defendants further allege that the contract having been made in New York, that plaintiff cannot recover because plaintiff was not a real estate broker or salesman as required by the New York statute.

The contract was entered into in New York, although some of the alleged

services were performed in Pennsylvania and some in Florida. It is well settled that the validity of a contract is determined by the law of the place where it is made. Pritchard v. Norton, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104; and if a contract is not valid under the law of the place where it is made it will not be enforced in another state in which it would have been valid if made there. Burr v. Beckler, 264 Ill. 230, 106 N.E. 206, L.R.A.1916A, 1049, Ann.Cas. 1915D, 1132.

The pertinent provisions of the New York statute, Real Property Law, Consol. Laws, c. 50, are as follows:

"Section 440. Definitions. Whenever used in this article 'real estate broker' means any person, firm or corporation, who, for another and for a fee, commission or other valuable consideration, lists for sale, sells, * * * exchanges, buys or rents, or offers or attempts to negotiate a sale, * * * exchange, purchase or rental of an estate or interest in real estate. * * *"

"Section 440-a—No person, co-partnership or corporation shall engage in or follow the business or occupation of, or hold himself or itself out or act temporarily or otherwise as a real estate broker or real estate salesman in this state without first procuring a license therefor as provided in this article.

"Section 442-d. Actions for commission; license prerequisite. No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting, or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.

"Section 442-e(1). Any person who violates any provision of this article shall be guilty of a misdemeanor. The commission of a single act prohibited by this article shall constitute a violation hereof. All courts of special sessions, within their respective territorial jurisdictions, are hereby empowered to hear, try and determine such crimes, without indictment, and to impose the punishments prescribed by law therefor."

"Section 442-e(3). Penalty recoverable by person aggrieved. In case the offender shall have received any sum of money as commission, compensation or profit by or in consequence of his violation of any provision of this article, he shall also be liable to a penalty of not less than the amount of the sum of money received by him as such commission, compensation or profit and not more than four times the sum so received by him, as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved and for his use and benefit, in any court of competent jurisdiction. (L 1929, c. 617, Eff. July 1, 1929)."

The general rule laid down by the weight of authority is that where a statute declares that it shall be unlawful to perform certain acts thereby prohibited without a license, and imposes a penalty for violation, contracts for the performance of such acts, are necessarily void and incapable of enforcement, and this without reference to whether the act is to protect the public or merely to raise revenue. 30 A.L.R. 841; Johnston v. Dahlgren, 166 N.Y. 354, 59 N.E. 987.

There is some authority to the effect that where the statute is in fact merely a revenue measure and was not enacted as a police measure for the protection of the public, failure to procure a license does not invalidate a contract. 169 A.L.R. 772.

In some jurisdictions, including New York, the statutes by express terms declare that no action can be maintained for recovery of compensation by a broker without allegation or proof that he was duly licensed. 169 A.L.R. 775.

Plaintiff contends that the statute affects the remedy and that it cannot invalidate contracts involving the sale of real estate outside of New York. In Frankel v. Allied Mills, Inc., 1938, 369 Ill. 578, 17 N.E.2d 570, 572 appellee was a licensed Illinois broker, but was not a licensed New York broker, and appellant contended that he was precluded from re-

covery by reason of the illegality of his brokerage contract. Sections 440 and 442 of the New York Real Property Law were cited to support this contention. Appellee (the broker) contended that the contract was valid and that the New York statute merely affected the remedy. This is the same contention of plaintiff in the case at bar.

The Illinois court felt that under the New York statute the contract was null and void and incapable of enforcement. In this case the Court said: "The location of the land outside the State of New York does not affect the policy of the statute, since it is the vendor and the purchaser who are sought to be protected. The statute does not in any way seek to regulate the sale of Illinois real estate, but operates only on the brokerage contract."

It is, therefore, clear that if the contract between plaintiff (Ruiz) and the defendants was for the purchase of real estate, i.e., a real estate brokerage contract, under the New York statute, it is null and void and is unenforceable in any forum.

However, the New York Court of Appeals in Weingast v. Rialto Pastry Shop, 243 N.Y. 113, 152 N.E. 693, 694, in a case involving the sale of a business as a going concern, held that the broker was not required to have a license to negotiate the transaction. The sale included the store, lease, good will, tables and everything that went with the business (a restaurant). In construing the statute, the New York Court said: "We do not think this provision broad enough to cover, or was intended to cover, every transaction in which an interest in real estate may be part of the subject of transfer. It does not apply to one who exercises the calling of selling or exchanging businesses as going concerns although, as part of the good will, such sales may include the lease of a store or building. One who makes a specialty of procuring purchasers for restaurants, drug stores, grocery stores, and the like as going concerns, where a lease simply goes with the place as a part of the good will, does not become, within this law, a real estate broker. As failure to procure a

license is made a crime, the statute must not be extended by implication."

In the Weingast case the Court allowed recovery the holding being bottomed on the fact that it was the business and not the real estate (a lease) that was sold, the lease being sold incidentally as part of the good will. See also Reichardt v. Hill, 6 Cir., 236 F. 817.

In James v. Alderton Dock Yards, 1928, 225 App.Div. 675, 231 N.Y.S. 215, it was held that the requirement of a broker's license does not apply to one who sells business as a going concern, including real estate as part of the subject matter of transfer.

In Seckendorff v. Halsey, Stuart & Co., Inc., 229 App.Div. 318, 241 N.Y.S. 300, Supreme Court, App.Div.1930, the complaint set forth a written contract by one of defendants referring to proposed financing of certain properties, in which it was agreed that defendant would pay plaintiff an "originating commission" of percentage of par value of securities they might purchase for distribution to the public and certain bonus on other securities. Defendants contended that the services rendered were those of real estate broker and therefore no recovery could be had because plaintiff was not a licensed real estate broker.

Securities ultimately issued were of two kinds, mortgage bonds and debentures. Defendants had the right to select the form of bonds to be issued if they undertook the financing. The Court held "it may not be said that they (defendants) are without liability upon an express engagement to pay an originating commission merely because they subsequently decided that the financing was to be in part through bonds secured by a mortgage lien. Obviously, if plaintiff did not, as he asserts, negotiate for a loan on real estate secured or to be secured by a mortgage, his right to compensation is not defeated by the statute.

In Claggett v. American Bowling & Billiard Corp., Sup.1944, 48 N.Y.S.2d 856, purchase of a business (company with woodworking facilities) though it involved transfer of realty, was not a "real estate transaction" as to preclude recovery of

commission for services rendered in assisting and advising purchaser in negotiating deal on ground that person rendering such services was not a licensed real estate broker. See also P. W. Chapman & Co. **v.** Cornelius, 2 Cir., 1930, 39 F.2d 555.

In the case at bar, the record discloses that the whole transaction was on the basis that the contract was for the purchase of a distillery and the land was purely incidental. There is nothing in the record indicating that the land enhanced the value of the distillery. The record is silent as to the value of the land.

The distillery which was acquired by the defendant Miguel Angel Garcia Mendez and to which the alleged services of plaintiff as broker refer was acquired under an agreement dated November 12, 1943, which reads as follows:

"1. The Vendor agrees to sell and the Vendee agrees to buy the real property situated at Wauchula, in Hardee County, Florida, hereinafter described, and the buildings thereon erected, together with the distillery machinery and equipment, and all other machinery and equipment and items of personal property of every nature and description now on the said premises, whether or not attached thereto, (except an automobile and contents thereof). All the foregoing is sold and must be purchased as a unit.

"2. The real property above mentioned is described as follows: The Northwest quarter of the South Half of the Southwest quarter of the Northwest quarter of Section Nine (9), township thirty-four (34) South, Range twenty-five (25) East, NW¼ of S½ of SW¼ of NW¼ of 9–34–25."

It is significant that Ruiz's offer in letter of March 20, 1942, in reporting that he had located a distillery in Florida, stated: "This plant has capacity to ferment 85,000 gallons and it is being offered complete including the building which is also new, of brick and concrete, including distillery, bottling plant and office on 4½ acres of land. They are asking $110,000 net for it complete including all equipment, building and land and will not sell it in any other way."

The Weingast case and subsequent New York cases leads us to the conclusion that the sale of the land and the buildings where the distillery was located was a mere incident to the real transaction in the contemplation of the parties, to wit, an acquisition by defendant of the machinery and the equipment for a distillery for which transaction plaintiff Ruiz, under the law of New York, did not need a real estate broker's license.

Attached hereto and as a part of this opinion are the Court's findings of fact and conclusions of law. The Court allows the parties five (5) days within which to submit any additional findings of fact and conclusions of law, if they so desire.

### Findings of Fact.

1. The plaintiff, Charles M. Ruiz, is a resident of and domiciled in the City and State of New York and not domiciled in Puerto Rico. The defendants Americo Rodriguez and Miguel Angel Garcia Mendez are residents of the city of Mayaguez, Puerto Rico, and domiciled in Puerto Rico. The Mayaguez Distilling Company is a corporation organized under the laws of Puerto Rico. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $3,000.

2. Plaintiff has been continuously since 1937, and is now, engaged in the City and State of New York in business as an export agent, dealing in machinery, equipment and materials. An export agent, such as Ruiz, offers his services to persons and firms outside of continental United States, who are desirous of purchasing equipment, materials, supplies, machinery, and other articles within the continental United States. After request is made for certain equipment or machinery plaintiff would look for same and try to locate it. It is, and at all times material in this proceeding was, the custom of Ruiz and others engaged in business as export agents to obtain remuneration for their services from the off-shore purchaser by the addition of a premium to the domestic price of the article to be purchased, stated either as a percentage of the domestic price or as a flat sum. During the war years involved in this proceeding, namely, 1942 and 1943,

it was an accepted practice for export agents such as Ruiz to charge a higher premium or percentage of the domestic price for locating and purchasing scarce articles than for locating and purchasing relatively more easily obtainable ones. The accepted customary charge made by plaintiff and other export agents for locating and purchasing materials and articles was from 5% to 10% of the domestic price. Machinery and equipment for a distillery were scarce, difficult to locate and difficult to purchase when located, during the years 1942 and 1943.

3. Under date of February 25, 1942, Rodriguez wrote Ruiz asking him to locate certain equipment for a distillery. Ruiz made several inquiries in the course of which he located a distillery at Wauchula, Florida, then the property of Everglades Products Corporation, and on March 20, 1942, advised Rodiguez that this plant was available at a price of $110,000, but that the owners were not willing to sell unless the purchasers bought the land and buildings as well as the distillery equipment.

4. Rodriguez indicated interest in the Wauchula plant and requested Ruiz to see if the equipment could be obtained without the land and buildings. There was, simultaneously, additional correspondence and cables with respect to other distillery equipment located by Ruiz.

5. It was not the intention of Rodriguez and his associates to purchase any real property in Florida but solely to purchase the distillery, i. e., distillery equipment, and as between themselves, Rodriguez and his associates, and Ruiz, considered the machinery and equipment as personal property, regrettably located on real estate in Florida, which must be purchased in order to obtain the desired equipment. As between Rodriguez and his associates, and Ruiz, no part of the purchase price was assigned to the land or buildings in Florida, and it was contemplated that Ruiz's compensation would be based upon his services in obtaining the distillery equipment and machinery, and not upon the land.

6. Late in July 1942, Rodriguez went to New York on behalf of a group of persons engaged in promoting the organization of defendant Mayaguez Distilling Company. Both Rodriguez and Garcia Mendez were members of the group. Rodriguez, on behalf of this group, there represented to Ruiz that the group was ready to purchase the Wauchula distillery for the purpose of dismantling and shipping the same to Puerto Rico, if the plant should prove satisfactory and an acceptable price could be negotiated. Ruiz obtained permission to inspect the plant, and Ruiz, Rodriguez and an engineer employed by Rodriguez went to Florida on July 27, 1942 and made a physical inspection of the distillery.

7. Rodriguez and Ruiz returned to New York and there, on or about July 29, 1942, reached a verbal agreement with respect to the further services to be performed by Ruiz and with respect to the amount of his compensation, it being then agreed that Ruiz would receive a flat sum of $2,500 as a commission provided the deal was consummated within a reasonable time. This was less than Ruiz's customary charge for services of this nature, and Ruiz was induced to accept this figure by the representations of Rodriguez that if the plant was satisfactory and an acceptable price could be negotiated, the purchase would be promptly consummated.

8. Ruiz entered into negotiations with the owners of the Wauchula plant, and on August 14, 1942 obtained an offer for the sale of the plant, including land and buildings, at a price of $70,000. The offer was transmitted to the defendants, together with the plans and specifications of the plant, on August 14, 1942.

9. Both the price of $70,000 obtained by Ruiz, and the plant itself, were satisfactory to defendants, but defendants delayed their decision on the purchase until the deadline fixed in the offer, which was extended by Ruiz's efforts until October 15, 1942, had expired.

10. In his correspondence Rodriguez advanced several reasons for the delay in reaching a decision as to the purchase, mentioning principally the necessity of obtaining shipping facilities. In a subsequent letter dated October 8, 1942, Rodriguez indicated that this was no longer a barrier. Subsequently, on June 30, 1943, Rodriguez

offered the same plant to W. A. Taylor & Company, stating that shipping space had been obtained. On cross-examination Rodriguez admitted that this was not true, but that he could have gotten shipping facilities. It does not appear that shipping facilities were available when the plant was finally purchased in November, 1943. Under these circumstances, the Court finds that Rodriguez's testimony on this point is not credible, and that shipping facilities or permits for shipping facilities had nothing to do with the failure of defendants to purchase the plant for $70,000 in 1942.

11. The Court finds that Rodriguez and his associates did not in 1942 intend to make immediate purchase of the Wauchula plant or of any distillery, and that in representing to Ruiz that the purchase would be promptly consummated, Rodriguez misrepresented the facts to Ruiz. In this connection the statement of Garcia Mendez to the effect that the final decision to purchase the plant was made at a time when an agreement with Hiram Walker & Sons, with respect to the operation of the plant and to the sale of its product, had been reached in principle, is of significance. Also significant is the statement of Rodriguez in his letter to Ruiz of September 1, 1943 that "We have been informed by Mr. Durham that Rubin now that he sees we are really interested, is holding back and asking for more money than we had originally agreed upon."

12. Early in 1943, and without consulting or informing Ruiz or affording him an opportunity to participate, the defendants reopened negotiations for the purchase of the Wauchula plant directly with one David A. Rubin, who had represented the Everglades Products Corporation in the previous negotiations. The record does not reveal the course of these negotiations, or even whether Everglades Products Corporation was then the owner of the plant or whether Rubin was authorized to speak for the then owner. The negotiations for the purchase of the Wauchula plant in 1943 were conducted by one Richard C. Durham, a brother-in-law of the defendant Garcia Mendez, and one of the promoters of Mayaguez Distilling Company, and Ruiz was in no way responsible for them.

13. Ruiz was asked by Rodriguez late in June, or early in July, 1943 to participate in certain negotiations which Rodriguez sought to initiate with one Boyd A. Brown, who appears to have been an official of W. A. Taylor & Company or of its parent corporation, Hiram Walker & Sons. These negotiations were not related, or if so, only remotely, to the purchase of the plant by the defendants, but rather constituted an effort on the part of Rodriguez and his associates either to induce Hiram Walker & Sons to purchase the plant for removal to Puerto Rico and operation by defendants for account of Hiram Walker & Sons, or, in the alternative, to obtain a commitment or agreement from Hiram Walker & Sons by which, if defendant should purchase the plant and remove the same to Puerto Rico, it would be operated in conjunction with Hiram Walker & Sons. In connection with these negotiations, Rodriguez asked Ruiz to obtain permission from Rubin for an inspection of the plant by Brown. Ruiz was unable to obtain this permission, but it does not appear that he was at fault or that his failure to do so had any bearing on the subsequent purchase of the plant, or upon the consummation of defendants' proposed arrangement with Hiram Walker. Ruiz continued working on the proposition as evidenced by letters and telegrams to Rodriguez and Durham until October 9, 1943.

14. There is testimony that in June 1943 at the time of the opening of negotiations between the defendants and Brown, Rodriguez promised Ruiz a commission of $5,000. Rodriguez denies this, and the testimony is not clear as to why Rodriguez would at that time have agreed to an increased commission solely for Ruiz's services in connection with the purchase of the plant, or why Ruiz on March 8, October 9 and November 20, 1943 and on February 19, 1944, wrote Rodriguez requesting that he be paid the original commission of $2,500.

15. The negotiations being conducted by Durham with Rubin for the purchase of

the plant, simultaneously with Rodriguez's negotiations with Brown, were not proceeding satisfactorily, and on September 1, 1943, Rodriguez wrote Ruiz that Durham had been unable to get Rubin to maintain the original price of $70,000, but that Rubin now demanded $75,000. In this letter Rodriguez concludes with the following significant paragraph: "I have told my partners of your help in this deal, and even though at the last minute you seem to have lost interest in the deal, as you do not answer my letters and cables, you will have a commission of $1500.00 if the deal is closed at the price agreed upon, of $70,000.00. If Rubin insists on raising the price it is understood that the seller pays commission to the agent. That is if we should decide to buy, which we probably won't."

16. The charge made that Ruiz had failed to answer Rodriguez's letters and cables is unfounded. The Court further finds that the difference in price of $5,000 between the offer obtained by Ruiz in 1942 and obtained by Durham in 1943 was not a material factor in the final decision of the defendants to purchase the plant, and that if Durham's negotiations with Rubin failed, as they appear to have done, Ruiz was in no way at fault for such failure.

17. Neither Rodriguez nor either of the other defendants requested any further action from Ruiz in connection with the purchase of the Wauchula plant after October 9, 1943 and on November 12, 1943, the defendant Garcia Mendez purchased the same plant from one Beatrice C. Leff, for a price of $80,000 and immediately resold it to the Mayaguez Distilling Company for the same price, it being admitted by Garcia Mendez that he was acting on behalf of the Mayaguez Distilling Company in effecting the purchase. Ruiz was not informed of this purchase, or given any opportunity to assist in its consummation.

18. The Court finds that Plaintiff agreed to accept the sum of $2,500 for his services and finds that said services were reasonably worth $2,500.

19. The Court further finds that Ruiz expended $295 in the performance of the services requested by defendant.

## Conclusions of Law.

A. The Court has jurisdiction of this cause by virtue of the provisions of section 41 of the Organic Act of Puerto Rico Act of March 2, 1917, chapter 145, 39 Stat. 965, as amended, 48 U.S.C.A. § 863.

B. An agency relationship was created between Americo Rodriguez and Miguel Angel Garcia Mendez as principals and Charles M. Ruiz as agent for the purchase of the distillery equipment at Wauchula, Florida.

C. When Ruiz obtained from Everglades Products Corporation an offer of sale of the Wauchula plant and caused the offer and plans and specifications to be transmitted to his principals, he had performed all services which were reasonably due from him, and was entitled to assume that if his principals found the price satisfactory and the machinery and equipment suitable, they would purchase the same within a reasonable time and pay him his agreed commission of $2,500.

D. Mayaguez Distilling Company, having accepted and retained the property which was the object of the services rendered by Ruiz and having, through its principal stockholders, Garcia Mendez and Rodriguez, notice that would lead to full knowledge of the facts upon which Ruiz's claim for compensation is based, impliedly adopted or ratified the agency contract with plaintiff and is liable with Rodriguez and Garcia Mendez for the payment of proper compensation to Ruiz.

E. Defendants have contended that plaintiff is not entitled to recover because the contract of employment is illegal under the laws of the State of New York, and have directed attention to the provisions of sections 440, 440-a and 442-d of the Property Law of that State, defining real estate brokers, prohibiting any person from acting as such in any city of the State of New York without first obtaining a license as such, and denying access to the courts of the State for the recovery of compensation "for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting, or negotiating a loan upon any real

estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose."

Plaintiff was originally employed to locate distillery machinery and equipment which defendants desired to purchase and there is no indication in the record that as between the parties there was any variation in the terms of this original contract. The suggestion is made that because, in the performance of this original contract, plaintiff found satisfactory machinery and equipment at an acceptable price located upon land in Florida which had also been purchased in order to obtain the desired machinery and equipment, the original contract for the purchase of chattles became in some way converted into one for the purchase of real estate. To so hold would be to convert the real estate licensing laws into veritable traps for the unwary. This is not an action to recover compensation for services rendered in the buying of real estate. Plaintiff is suing for the commission which defendants agreed to pay him in locating distillery equipment, and in connection with purchase of a distillery. Plaintiff is a machinery export broker and not a real estate broker. Defendants requested plaintiff to locate a distillery. Plaintiff located the distillery and advised defendants that the owners wanted to sell the entire plant as a unit including the land. Defendants wanted a distillery and not land, and the real estate was only incidental to their main objective which was to buy the distillery machinery. The services rendered by plaintiff did not constitute him a real estate broker within the statute. The statute being highly penal must be strictly construed. Weingast v. Rialto Pastry Shop, 243 N.Y. 113, 152 N.E. 693; Land Co. of Florida v. Fetty, 5 Cir., 15 F.2d 942; see also James v. Alderton, Dock Yards, 1928, 225 App.Div. 675, 231 N.Y.S. 215; Claggett v. American Bowling & Billiards Corp., Sup.1944, 48 N.Y.S.2d 856; P. W. Chapman & Co., Inc., v. Cornelius, 2 Cir, 1930, 39 F.2d 555; Seckendorff v. Halsey Steward & Co., Inc., 229 App.Div. 318, 241 N.Y.S. 300, Supreme Court, App.Div.1930.

F. Plaintiff is entitled to interest at the legal rate of 6% on the principal amount of the judgment from the date of the commencement of this action until full payment, together with the costs of this action.

Judgment will be entered in accordance herewith.