# United States Court of Appeals
## For the First Circuit

No. 04-2087

LUIS R. RONDA-PEREZ; MERCEDES A. QUESADA-RODRIGUEZ,

Plaintiffs, Appellants,

v.

BANCO BILBAO VIZCAYA ARGENTARIA -- PUERTO RICO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Enrique J. Mendoza-Mendez with whom Mendoza Law Offices was on brief for appellants.
Pedro J. Manzano-Yates with whom Rosa M. Mendez-Santoni and Fiddler Gonzalez & Rodriguez, PSC were on brief for appellee.

April 13, 2005

**COFFIN, <u>Senior Circuit Judge</u>.** This is an appeal from a grant of summary judgment for the employer-defendant in an age discrimination suit. We affirm essentially for the reasons articulated in the district court's opinion, which contains a clear and detailed statement of facts and a conclusion, with which we agree, that there was a complete failure of proof of age as a motivating factor. We add this supplementary opinion to address, at plaintiff-appellant's urging, the question whether, in light of <u>Reeves</u> v. <u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133 (2000), plaintiff's prima facie case, together with his assaults on the truth of appellee's reasons for terminating him, are enough, without more, to defeat summary judgment.

## I. <u>The Investigation</u>

Plaintiff, a 54-year-old branch manager who had been employed by the bank or its predecessor since 1986 and whose salary had increased from $31,944 in 1994 to $40,430 in 2000, was dismissed and replaced by a 42-year-old woman. Defendant's action followed an investigation of plaintiff, which was initiated by a complaint from a fellow employee, Nélida Colón. She alleged that plaintiff regularly made comments about the physical attributes of female customers entering the bank, had disclosed the bankruptcy filing of a client and former branch manager, discussed an employee's evaluation with a client, had not been active in seeking to

-2-

increase bank business, and had meddled with the personal lives of herself and a coworker.

The bank initiated an investigation into the complaint, which was conducted by a Human Resources officer, Manuel Frías. He interviewed Colón and three other employees, finding agreement among them confirming Colón's charges. He conducted two rounds of interviews with these employees and met with plaintiff to review their charges. Eventually, Frías prepared a report and recommendation for dismissal, based on the facts that plaintiff's conduct had a negative impact on the work environment of the branch, that his comments and conduct had exposed the bank to liability, and that he had violated the bank's policies against sexual harassment and confidentiality of information. This report was accepted by and implemented by the bank's Director of Human Resources.

Other facts bearing on the course of this process will be discussed in connection with our analysis.

## II. Analysis

Plaintiff asserts that he has established a prima facie case. Defendant concurs. He was in the protected age group, had been performing well, suffered an adverse employment action, and was replaced by a younger person. See De la Vega v. San Juan Star, Inc., 377 F.3d 111, 117 (1st Cir. 2004). The question to be resolved is whether the defendant's explanation of its conduct,

-3-

together with any other evidence, could reasonably be seen by a jury not only to be false but to suggest an age-driven animus. See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002).  After due consideration, we have concluded that the answer is "No."

     In Reeves, the Supreme Court emphasized the possibility that a plaintiff may survive summary judgment not by unearthing positive evidence of a discriminatory motive, but by showing that an employer's proffered justification for its adverse employment action was such that a "trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  See 530 U.S. at 147 (citing Wright v. West, 505 U.S. 277, 296 (1992)).  The Court went on to disavow that a showing of pretext automatically would suffice to defeat summary judgment, saying,

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

Id. at 148-49.

     In Reeves, two characteristics of the evidence stand out: there was "a substantial showing that respondent's [employer's] explanation was false," and, in addition to a prima facie case and the showing of falsity in the employer's explanation, there was

"additional evidence that Chestnut [employer official] was motivated by age-based animus and was principally responsible for petitioner's firing." See id. at 144, 151.

Under these circumstances - "a prima facie case of discrimination . . . , enough evidence for the jury to reject respondent's explanation, and . . . additional evidence of age-based animus," id. at 153 - the Court held that a jury could find intentional discrimination. Shortly after Reeves was decided, we had occasion to reconsider a ruling we had made in Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1 (1st Cir. 2000). In an order denying panel rehearing, we held that our analysis was consistent with Reeves, and reiterated that the thinness of the plaintiff's showing of pretext, while enough to create a triable issue as to the falsity of company reasons, failed to shed any light on what the true reason was, "'let alone show that the reason was discrimination based on [ethnic] origin.'" Id. at 10. There was no other evidence of actions or words evidencing an ethnic bias sufficient to support a jury verdict of discrimination.

In this case, it is undisputed that plaintiff has established a prima facie case. Plaintiff was 54 at the time of his termination, had performed well (as evidenced by regular salary increases), and was succeeded by a 42-year-old person. But we have no information about that person's background or experience. As

for additional evidence pointing to age discrimination, appellant has made only conclusory statements about his employer "taking out" two other older managers, José Ramos and Pérez Caratini, but he acknowledged that he did not know why they were terminated or who was responsible for the decisions. Moreover, the record is bereft of any age-related comments. For the six years preceding the events in this case – when plaintiff already was older than the age at which his successor took the position – he had been awarded annual raises in salary, hardly evidence of preexisting age-related animus. See Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002)(no basis for inferring gender discrimination where employee was regularly promoted before discovery of irregularities).

Whether plaintiff's showing was adequate to warrant further fact finding therefore depends on his evidence of pretext. In Reeves, the Court cites Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), for the proposition that a plaintiff must have the opportunity to prove that "'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" 530 U.S. at 143. The Seventh Circuit in Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000), elaborates, explaining that "[a] 'pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover

one's tracks."  This is consistent with dictionary guidance: "something that is put forward to conceal a true purpose or object." The Random House Dictionary of the English Language 1534 (2d ed. 1987).

Plaintiff attempts to establish this kind of pretext by firing a spirited volley of some twelve charges, with the hope that the resulting smoke will be considered proof of fire.  We consider them carefully but conclude that the smoke dissipates with the firing of each charge.

To begin, the investigation leading to plaintiff's dismissal was in response to a complaint by a fellow employee, Colón.  Human Resources Officer Frías conducted two sets of interviews with branch employees and met with plaintiff.  The other employees generally agreed with the instigating employee.  Plaintiff did not assert any adverse motive or bias on the part of any of these persons and conceded that Frías was doing his job.

While plaintiff denied the alleged misconduct, Frías deemed all his informants credible.  The question is not whether plaintiff's or his fellow employees' version is the true one, but whether Frías and his superiors believed what he had been told by those he interviewed.  See Zapata-Matos, 277 F.3d at 45-46 ("[T]he ultimate question is not whether the explanation was false, but whether discrimination was the cause of the termination."); Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996) ("[T]he

issue is not whether [the employer's] reasons . . . were real, but merely whether the decisionmakers . . . believed them to be real."). Plaintiff's plea that his denials establish triable issues of fact foreclosing summary judgment would, if accepted, spell the end of summary judgment. Of similar nature is plaintiff's assertion that all of the witnesses against him should be deemed unworthy of belief because they were all connected with his and their employer.

Plaintiff's catalogue of "fishy" characteristics of the investigation starts with the assertion that, during much of it, he was kept in the dark about complaints concerning his sexist comments about bank customers. In his deposition, he initially stated that he was told in his meeting with Frías that the complaints against him concerned his disclosure of confidential information about a client, discussing an employee evaluation with a client, discriminating against students who sought information for homework, meddling in the life of Colón and a coworker, and failing to go out to get business.

Upon being pressed as to his memory of that meeting, he testified as follows:

> Q. . . .[A]t any time did they mentioned [sic] that there were some complaints about certain comments and the way that you referred to the women who went to the branch?
>
> A. No, no, what I was told at that time was that I made comments as to the ladies that came in or walked in front of the branch. Before Noel Torres I questioned him and

he said no, that he had not heard that. That is why I don't mention it, because Mr. Noel Torres denied it, he said no.

Q. But that was something that Mr. Manuel Frias brought to your attention.

A. In the first I don't consider it.

Q. And it was something about certain complaints that had been made by the employees.

A. Supposedly.

Notwithstanding this deposition testimony, plaintiff maintains that he did not learn of complaints of "sexual harassment" until defendant filed answers to interrogatories. But the answer he cites reveals information identical to that given him by Frías in his first meeting: "Mrs. Colón complained that Ronda regularly made comments in relation to the females that visited the Branch, specifically their appearance and body." We see no indication that any lack of clarity in giving notice of this particular charge could point to any devious effort to conceal age discrimination.

Plaintiff also contends that he demonstrated the falsity of the information on which Frías relied to conclude that he had violated the bank's confidentiality strictures. But to be relevant on the issue of employer deviousness, the fact of such falsity must have been communicated to Frías, the investigator. Frías, however, found the responses of the employees to be consistent, and he knew of no reason to disbelieve them. Plaintiff now relies on the fact that the asserted breaches of confidentiality (one relating to a

client bankruptcy and the other to an employee evaluation) have been contradicted by disinterested witnesses. But these contradictions were contained in affidavits signed after suit had been brought, a year after Frías made his investigation and recommendation to superiors. This evidence, therefore, cannot reflect on Frías's honest belief at the time he made his report.

Plaintiff also itemizes a variety of alleged procedural irregularities, which he claims indicate the suspicious nature of the investigative process. He points to the more favorable treatment of a coworker, Assistant Manager Neil Torres, who admitted his complicity in stimulating some of the sexist observations. He was not terminated, and instead received a reprimand and warning. But Torres had evidenced remorse, had freely acknowledged his inappropriate behavior, was at a lower level of responsibility than plaintiff, and was free from the other criticisms levied at plaintiff.

Plaintiff also complains of differences in note-taking in the investigative interviews. While notes were taken during interviews with his fellow employees, who also were asked to read and sign such notes, conversations with plaintiff were not simultaneously recorded. Plaintiff even points, as evidence of pretext, to such minutiae as inconsistent testimony concerning whether employee Carmen Morales signed notes from one or both of her meetings with Frías. Putting the worst face on such differences, we could say

only that perhaps it would have been better if there had been either more uniformity in recording interviews or a reasonable explanation for any differences in treatment. But on no account could we say that such vagaries amount to "a lie rather than an oddity or an error," Kulumani, 224 F.3d at 685. In referring to a similar "step-by-step" criticism of another employer investigation in Rivas Rosado, we observed that "Title VII . . . does not ensure against inaccuracy by an employer, only against gender-based discrimination," 312 F.3d at 534-35.

The fact that the Human Resources Department had delayed in processing an inquiry from plaintiff about the termination of a probationary employee similarly does not imply anything from its more rapid attention to this obviously serious matter involving possible hostile work environment. Nor can the existence of a simple offer of payment conditioned on settlement of any age discrimination claim be seriously considered prejudicial to an employer in a situation of this nature. The district court included this in its summary of evidence that it found had no bearing on the issue of age discrimination. We do not disagree, but add our view that this rejected offer, made in the context of an obviously contested investigation, fits within the spirit if not the letter of Fed. R. Evid. 408, which bars consideration of offers of compromise. Even if considered, the modest amount of the offer, the articulated purpose of providing some help during a transition

period following termination, and the specific disavowal that any payment constituted an admission of age discrimination effectively deprive it of significant weight in assessing the propriety of summary judgment.

We have considered plaintiff's remaining criticisms, but find them not to merit our further attention.

This case is similar in an important way to Baralt v. Nationwide Mutual Insurance Co., 251 F.3d 10 (1st Cir. 2001), where we set aside a verdict for the employee, notwithstanding that the employer bore a heavy burden under Puerto Rico law to prove that its decision was not motivated by age discrimination.  The facts established a similar prima facie case: plaintiffs were within the protected class, they were fired, and they were replaced, one by a slightly younger person and the other by a much younger person, although also within the protected class.

The employer's actions were such as to entitle the jury to disbelieve its stated reasons.  Despite the plaintiffs' long and successful service, a Human Resources officer who had not reviewed plaintiffs' files and had interviewed them for only a brief time abruptly announced his decision to terminate them following a field investigation of alleged improprieties.  See id. at 14-15.  We found defendant's rationale "far from compelling." Id. at 17.  But we noted that the probe leading to the dismissals had been triggered by employees, and that "with virtually no evidence

-12-

besides the discharges themselves pointing to age as a factor and none indicating that the investigation was fabricated by company officials to conceal other motives, a reasonable jury could not entirely reject the company's abundant evidence that the terminations stemmed, however unwisely, from the investigation." Id. at 19. Had the case been judged under federal standards, reversal would have been even more clear.

In sum, the dozen perceived chinks in appellee's reasons for terminating plaintiff let in no light as to any true reason, do not add up to the slightest suggestion of an effort to deceive or cover up a hidden motive, and obviously fail to indicate that there is a viable issue of age-related discrimination to bring before a trier of fact.

Affirmed.